**Donald R. SISSON and Mary Sisson, his Wife, Appellants**

v.

**Joseph STANLEY, his Heirs Successors, Executors, Assigns, and any Persons Claiming by, through, or from them, Appellees.**

Superior Court of Pennsylvania.

Argued April 1, 2014.
Filed Jan. 27, 2015.

---

**37.** Pa.R.A.P. 1925(a) Opinion, p. 6. **38.** Pa.R.A.P. 1925(a) Opinion, p. 6.

Stephen Pinnacoli, Scranton and Andrew J. Katsock, III, Wilkes Barre, for appellants.

Marion O'Malley, Montrose, for appellees.

BEFORE: DONOHUE, ALLEN, and STABILE, JJ.

OPINION BY STABILE, J.:

Appellants, Donald R. Sisson and Mary Sisson, appeal from the June 28, 2013 order granting the motion for judgment on the pleadings of Appellees, the heirs of Joseph Stanley. We affirm.

The parties dispute ownership of the right to mine Marcellus Shale gas underlying a 98.5 acre property ("the Property") located in Susquehanna County, Pennsylvania. In 1953, Joseph Stanley

transferred ownership of the Property to Pauline Battista subject to a reservation of "all of the oil and gas underlying the [Property]." Deed, 5/1/53.[1] On March 6, 1986, Battista transferred the property to Appellants, subject to the same reservation.

Chesapeake Appalachia, LLC, approached Appellants with a proposed lease agreement that would allow Chesapeake to extract the shale gas underlying the Property. Chesapeake advised Appellants of a cloud in their title based on the reservations of rights in the 1953 and 1986 deeds. On April 27, 2010, Appellants filed an action to quiet title[2] to clear the way for a profitable lease agreement with Chesapeake. The named defendants were "Joseph M. Stanley, his heirs, successors, executors, assigns, and any persons claiming by, through or from them." Complaint to Quiet Title, 4/27/10, caption.

Also on April 27, 2010, Appellants filed a motion pursuant to Rule 430(a) of the Pennsylvania Rules of Civil Procedure requesting permission to serve the named defendants by publication. Appellants, by and through their counsel, conducted a brief search for defendants documented in a skeletal affidavit which in pertinent part states:

> I, Douglas P. Thomas, Esquire, having been duly sworn according to law, hereby depose and state that I am co-counsel for [Appellants], and that I have investigated the title and potential Defendant in this matter and that I have been unsuccessful in my attempts to locate the named Defendant and/or his heirs, successors, personal representatives and/or assigns by doing the following:

> 1. Checking the public records in the Offices of the Recorder of Deeds of Susquehanna County, Pennsylvania;

> 2. Searching local telephone directories for the named Defendants or individuals with similar names; and

> 3. Checking various internet sites for the names and possible locations of the named Defendants.

Affidavit, 4/27/10. The trial court granted Appellants' motion and on May 5, 2010 Appellants published a notice of the pending action in the Susquehanna County Independent, a local newspaper.

After no interested party came forward to defend against Appellants' action, the trial court entered an order and decree, dated July 12, 2010, providing that the named defendants were forever barred from asserting any interest in the Property unless they brought an action in ejectment within 20 days. Order and Decree, 7/12/10. Again, no interested party came forward and on August 2, 2010, the trial court entered final judgment against the named defendants, forever barring them from asserting any interest in the property.

On November 9, 2010, Rita Stanley Lupold ("Lupold"), claiming to be the sole surviving sibling of Joseph Stanley, came forward and filed a petition to open the judgment. Lupold alleged the trial court lacked jurisdiction to enter judgment because Appellants failed to effect proper service of process. The trial court agreed, and on December 28, 2010 entered an order opening the judgment. Thereafter, Lupold filed preliminary objections, dated January 14, 2011, to Appellants' complaint to quiet title. Appellants amended their

---

1. Appellants attached the Deed to their complaint as Exhibit B.

2. Rules 1061–86 of the Pennsylvania Rules of Civil Procedure govern actions to quiet title. Pa.R.C.P. Nos. 1061–68.

complaint on February 3, 2011. Lupold filed preliminary objections to the amended complaint on February 22, 2011, and Appellants answered those objections on March 18, 2011. On July 28, 2011, the trial court entered an order overruling Lupold's preliminary objections. On August, 17, 2011, Lupold filed an answer, new matter, and counterclaim to Appellants' amended complaint. The new matter asserted that the applicable statute of limitations barred Appellants' complaint, and the counterclaim asserted that the pending action prevented Lupold from profiting from the shale gas. Answer, New Matter, and Counterclaim, 8/27/11, at ¶¶ 50–64. On September 8, 2011, Appellants answered the new matter and counterclaim. After the parties were unable to resolve the matter at an April 17, 2012 pre-trial conference, the trial court scheduled trial for August 27, 2012. Trial was continued several times and eventually scheduled for July 1, 2013.

On June 4, 2013, Lupold filed a motion for judgment on the pleadings, asserting that no viable legal theory exists upon which Appellants could obtain the relief they seek. Appellants answered that motion on June 19, 2013 and on June 28, 2013 the trial court granted Lupold's motion. This timely appeal followed. Appellants raise three assertions of error:

> I. Should the lower court grant a Petition to Open a default judgment because of an insufficient search under Pa.R.C.P. 430 due to additional evidence being presented by the 'after-found' heirs, when the lower court already determined the Appellants conducted a sufficient good-faith investigation based upon Appellants' affidavit and a hearing in accordance with [Pa.R.C.P.] 430?

> II. After a trial court rules on an affidavit of Good Faith Search pursuant to Pa.R.C.P. 430, notwithstanding said court's ability to inquire about or conduct a hearing relative to such affidavit, should said court entertain after-discovered evidence to overturn the initial ruling, even if such action by the court effectively casts a cloud on every title ever acquired via a quiet title action served by publication?

> III. Is a Judgment on the Pleadings an acceptable ruling when the intent of the parties is put into question by the 'Dunham [3] Rule,' and its progeny, and such intent, regarding the extent of the reservation, remains a material issue of fact?

Appellants' Brief at 6–7.[4]

■ Appellants' first two assertions of error address the trial court's application of Pa.R.C.P. 430. Rule 430 governs motions for service by special order of court, including service by publication. Rule 430(a) provides that any such motion be "accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." Pa. R.C.P. 430(a). The Note to Rule 430(a) provides as follows:

> An illustration of a good faith effort to locate the defendant includes (1) inquiries of postal authorities including inquiries pursuant to the Freedom of Information Act [. . .], (2) inquiries of relatives, neighbors, friends, and employers of the defendant, and (3) exami-

---

3. *Dunham and Shortt v. Kirkpatrick,* 101 Pa. 36 (1882).

4. Nowhere in their brief do Appellants challenge the trial court's compliance with Pa. R.C.P. 206.7, governing the procedure to be followed after the issuance of a rule to show cause. The Dissent's discussion of that Rule is therefore inapposite.

nations of local telephone directories, voter registration records, local tax records, and motor vehicle records."

Pa.R.C.P. 430(a), *note.*

■ In *Deer Park Lumber, Inc. v. Major,* 384 Pa.Super. 625, 559 A.2d 941 (1989), the plaintiff filed an affidavit that "failed to provide any indication of the types of procedures used to locate [the defendants]." *Id.* at 944.[5] Nonetheless, the plaintiff offered testimony indicating that it searched deed books, tax records, will books, and a voter registration list in Wyoming County. *Id.* at 945. The plaintiff located a deed subjecting the property at issue to a reservation of rights and listing the defendants' address in Luzerne County. *Id.* The plaintiff filed its quiet title action in Wyoming County and made no effort to locate defendants in Luzerne County. *Id.*

Construing the Note to Rule 430(a), this Court wrote:

> While by no means exhaustive, this Note is at least indicative of the types of procedures contemplated by the legislature when enacting Rule 430. **In essence, it provides that more than a mere paper search is required before resort can be had to the publication provisions of Rule 430(b).**

*Id.* at 946 (emphasis added). Another party interested in the land, and also in possession of the information from the deed, traveled to Luzerne County and located an heir of the defendants in less than one hour. *Id.* This Court concluded the plaintiff's failure to investigate outside of Wyo-

ming County rendered its investigation inadequate. *Id.*

■ Due process of law requires an adequate investigation for interested parties. Courts have repeatedly expressed the importance of proper service of process. "Service of process by publication is an extraordinary measure and great pains should be taken to ensure that the defendant will receive actual notice of the action against him." *Fusco v. Hill Fin. Sav. Ass'n,* 453 Pa.Super. 216, 683 A.2d 677, 680 (1996). "Due process, reduced to its most elemental component, requires notice." *PNC Bank, N.A. v. Unknown Heirs,* 929 A.2d 219, 230 (Pa.Super.2007). In both *Fusco* and *PNC,* counsel sought permission for alternative service even though they were aware of the identity of a potentially interested defendant. The *Fusco* Court criticized counsel's action as "callous in the least and opportunistic at worst." *Fusco,* 683 A.2d at 681.

■ As our federal courts have observed: "Service of process is not a mere technicality. Rather, constitutional due process requires that service of process be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Calabro v. Leiner,* 464 F.Supp.2d 470, 471 (E.D.Pa.2006) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). To this end, Rule 430(a) applies only where **"service cannot be made"** in the normal

---

**5.** Pursuant to *Deer Park,* the three-prong test applicable to petitions to open judgment does not apply where the "party seeking to open the judgment has not received valid service or notice of the proceedings." *Deer Park,* 559 A.2d at 943. In such a case, "the court has no jurisdiction over the party and is powerless to enter judgment." *Id.* In other words, the party seeking to open the judgment does not bear the burden of proving a meritorious

defense. First we must analyze, as the *Deer Park* court did, whether service was proper under Rule 430. Thus, we disagree with the Dissenting Judge's assertion that we have ignored the standard of review applicable to petitions to open a judgment. We believe *Deer Park* is directly on point and controlling, and therefore the better course is simply to apply *Deer Park's* clear directive rather than go to great lengths to distinguish it away.

fashion. Pa.R.C.P. 430(a) (emphasis added).

Based on the foregoing, we agree with the trial court's conclusion that Lupold did not receive proper service of process. Under the rationale of *Deer Park*, Appellants' affidavit is facially deficient.[6] An examination of each paragraph of this affidavit evidences a complete lack of due diligence and good faith to locate any of the named defendants to this action.[7]

In paragraph 1, counsel indicates he searched the records in the Recorder of Deeds Office of Susquehanna County. In their action, Appellants named Joseph Stanley, his heirs, successors, executors, assigns, and any persons claiming by, through, or from them. One would presuppose that a good faith effort to locate heirs would include a search for records at the Register of Wills office. Although counsel notes that the Recorder of Deeds office in Susquehanna County also houses the Register of Wills, his affidavit only mentions a search of the Recorder of Deeds records. Counsel already had the relevant deeds to the property in which Joseph M. Stanley transferred real property to Pauline M. Battista subject to a reservation of rights in the underlying oil and gas. It is therefore not clear what counsel hoped to gain from his search of the Recorder of Deeds office. Regardless, the affidavit does not indicate in any manner that a relevant search was performed to locate any wills or other probate records. A good faith search for heirs should have included at least this basic research. Had this been done, counsel would have found, as the trial court noted, the will of E.J. Stanley, Joseph's father, which identified no fewer than twelve siblings to Joseph.[8]

6. The facial deficiency of the affidavit is our primary point of departure from the Dissent. Contrary to the Dissent's assertion, we do not concede that a facially deficient affidavit constitutes compliance with Rule 430(a). In addition, the facial deficiency of the affidavit renders superfluous the Dissent's discussion of Pa.R.C.P. 206.7. No discovery, evidentiary hearing or fact finding was necessary to find the affidavit facially deficient. Similarly, the E.J. Stanley will, discussed *infra*, is unnecessary to support a conclusion that Appellant's affidavit is facially deficient. The apparent ease with which the trial court located the will is highly damaging to Appellants' argument that they engaged in a good faith search pursuant to Rule 430. Nonetheless, the will alone was not the basis for opening the judgment. Appellants' **failure to search for the will,** rather than the will itself, illustrates why their affidavit is facially deficient. Accordingly, our decision in this this appeal would be the same regardless of the will's presence in the certified record. We address each of these points more fully throughout this Opinion.

7. We are quite troubled by counsel's description of his alleged additional efforts to locate Stanley or his heirs mentioned for the first time by counsel in his brief to this Court. *See* Appellants' Brief at 7, 13–14. These extraneous efforts are not verified and dehors the record in this case. Since they were not before the trial court and not part of the certified record, this Court may not consider them. Counsel's explanation that these efforts would have been discovered had the trial court inquired about them, *id.,* deserves no comment other than to note it was incumbent upon counsel and it was counsel's burden to specifically identify all efforts to locate Stanley and his heirs in his Rule 430(a) affidavit. Counsel further offers no explanation why these alleged additional efforts were not included in his affidavit. Nonetheless, as described *infra,* counsel failed to investigate even the most obvious of resources to locate any of the named defendants.

8. The trial court relied on the will without objection from Appellants. We observe that under Pa. Rule of Evidence 201(b)(2), the trial court can take judicial notice of a fact "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be questioned." Rule 201(e) permits parties an opportunity to be heard on the propriety of taking judicial notice upon timely request.

Concerning paragraph 2 of the affidavit, counsel apparently did not consider that some or all of Joseph M. Stanley's heirs could have moved since 1953. A search of local telephone directories is certain to be fruitless if any surviving heir is no longer local. Certainly, the age of the 1953 Deed and Appellants' naming all heirs as defendants suggests searches of other records, such as obituaries, should have been performed. In their petition to open and/or strike, Appellees assert a simple search of the local newspaper obituaries would have revealed Joseph's death and identified his surviving sister, nieces and nephews.[9] Yet, counsel did not perform this seemingly logical search. We are not setting forth a *per se* rule requiring an obituary search for possible heirs, but in this case counsel's failure to check local death record resources illustrates how his efforts so clearly fell below the reasonable due diligence necessary to justify service by publication.

Finally, with regard to paragraph 3, counsel's complete failure to identify which Internet sites he visited or what searches he ran provides no basis upon which to ascertain if counsel exercised due diligence and good faith in his efforts to locate Joseph Stanley's heirs. Given the ease of identifying and using sophisticated Internet services to trace ancestry and family history, it is inconceivable that counsel, employing good faith efforts, was unable to locate a single Stanley heir.

Counsel's attempt to locate any of the named defendants to this action does not demonstrate even a minimal effort to conduct a search of those resources identified to the Note to Rule 430(a). Resources noted to Rule 430(a) include inquiries of postal authorities, inquiries pursuant to

Pursuant to Rule 201, courts can take notice of public documents. For example, in *Pocono Summit Realty v. Ahmad Amer, LLC*, 52 A.3d 261 (Pa.Super.2012), a quiet title action, the trial court took judicial notice of a subdivision plan that plaintiffs referenced but failed to attach to their complaint. *Id.* at 267 n. 2. This Court affirmed, adopting the trial court's opinion. *Id.* at 266.

Likewise, in *Bykowski v. Chesed Co.*, 425 Pa.Super. 595, 625 A.2d 1256 (1993), this Court held that in reviewing an order granting judgment on the pleadings, the trial court could take judicial notice of information from the Lehigh County Recorder of Deeds office. *Id.* at 1258 n. 2. At issue in *Bykowski* was ownership of certain real estate and improvements thereon.

Here, the trial court did not expressly take judicial notice of the will, nor did it cite to Rule 201 or any of the aforementioned case law. Regardless, the trial court plainly had authority to rely on the will, which was on file at the Susquehanna County Register of Wills office, and it did so without objection. The will has been incorporated into the certified record.

The Dissent's reliance on *Chaplin v. Pelton*, 282 Pa.Super. 487, 423 A.2d 8 (1980) is misplaced. There, the trial court decided disputed issues of fact based on its own assessment of records from the local recorder of deeds' office. *Id.* at 9. *Chaplin* was a trespass action involving a boundary dispute. *Id.* Instantly, the trial court did not analyze the substance of the will in order to decide a disputed issue of fact. Rather, the trial court noted Appellants' Rule 430 affidavit contained "no mention" of the will. Order, 12/29/10. The trial court was bound to assess the diligence of Appellants' purported good faith search for heirs. Thus, the trial court's decision rested on Appellants' failure to discover an easily discoverable document, not on the contents of the document itself.

9. The absence of the obituary from the certified record is of no moment. As noted above, Appellees' did not bear the burden of establishing a meritorious defense in order to open the judgment. The record contains no evidence that counsel searched obituaries. Counsel's failure to do so is relevant to our analysis of the adequacy of their search for interested parties. Indeed, counsel's appellate brief asserts he was unable to confirm that Joseph M. Stanley was deceased. Appellants' Brief at 8. To make this assertion without having searched for an obituary further underscores counsel's lack of diligence.

the Freedom of Information Act, inquiries of relatives, neighbors, friends, and employers of the defendant, and examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records. Pa.R.C.P. 430(a), *note*. With the exception of a non-specific reference to local telephone directories, counsel's affidavit falls woefully short of even the minimal good faith efforts suggested under Rule 430(a).

Counsel's search in *Deer Park*, which this Court deemed insufficient, included local "deed books, tax records, will books, and a voter registration list." *Deer Park*, 559 A.2d at 945. That search, though defective, was more thorough than the one documented in counsel's affidavit. In particular, we note that the *Deer Park* search included will books. Instantly, as explained by Appellees, a search of will books in the Susquehanna County Register of Wills office would have revealed the will of E.J. Stanley, devising real property to his son Joseph M. Stanley.[10] E.J. Stan-

ley's will also identifies **twelve siblings** of Joseph M. Stanley, each of whom received a devise of real property or a bequest of money. The last surviving sibling has come forward to challenge Appellants' quiet title action. Here, as in *Deer Park*, a very simple and minimal investigation would have revealed to Appellants the identity of potentially interested parties.[11]

Given the sparse information included in counsel's affidavit, and the seeming ease with which counsel could and should have located interested parties, we agree with the trial court's conclusion that counsel's investigation was insufficient to allow service by publication.[12] A contrary result would have Appellees forfeit their property rights as a penalty for Appellants' failure to exercise due diligence in their search for interested parties.[13]

■ Next, we address the trial court's entry of judgment on the pleadings in favor of Appellees. The trial court concluded that Joseph M. Stanley's reserva-

---

10. Appellants argue in their brief that "no estate records were ever filed for Mr. Stanley." Appellants' Brief at 8. Appellants do not explain counsel's failure to locate the will of Joseph M. Stanley's father.

11. The Dissent's distinction of *Deer Park* is unavailing. The Dissent argues *Deer Park* is distinguishable because the appellee there did not file any motion or affidavit purporting to comply with Rule 430. Here, the Dissent argues, Appellants complied with rule 430 because they filed a motion and affidavit. Dissenting Opinion at 277. The Dissent ignores the Comment to Rule 430 and the *Deer Park* Court's analysis of the Comment, both of which we addressed in the main text. Compliance with Rule 430 requires more than a *pro forma* motion accompanied by a superficial, facially insufficient affidavit. The affidavit here was deficient on its face.

12. Appellants miss the mark with their assertion that the trial court should not have revisited its decision to permit service by publication. As this Court made clear in *Deer Park*,

the trial court lacks jurisdiction to enter judgment against a party who has not received valid service of process. *Deer Park*, 559 A.2d at 943. We discern no error in the trial court's decision to assess whether it had personal jurisdiction over Rita Stanley Lupold after she came forward and filed her petition to open the default judgment.

13. Given the current climate to find and secure properties for gas exploration in the Marcellus Shale formation in Pennsylvania, it would not be unexpected to see many more attempts like those made by Appellants here to challenge property rights for the profit to be made in this industry. Given this pressure, it is imperative that courts be vigilant to ensure that good faith efforts are properly scrutinized, documented, and verified before authorizing service by publication. The failure to do so may leave property owners unaware that their property rights have been extinguished by operation of law, without their actual knowledge, and without the due process to which they are entitled.

tion of "all of the oil and gas underlying the said land" plainly applies to the shale gas now at issue. Deed, 5/1/53. Appellants argue that drilling for shale gas was unheard of in 1953, and therefore Joseph M. Stanley could not have intended to reserve rights to shale gas.

 Entry of judgment on the pleadings is appropriate "when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Consolidation Coal Co. v. White*, 875 A.2d 318, 325 (Pa.Super.2005). Our scope of review is plenary and we will reverse only if the trial court committed a clear error of law or if the pleadings disclose facts that should be submitted to a trier of fact. *Id.* "We accept as true all well-pleaded allegations in the complaint." *Id.*

The pertinent facts are not in dispute. Rather, the parties debate proper construction of the 1953 Deed under pertinent case law. Our Supreme Court has set forth rules applicable to the construction of a deed:

> (1) that the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Highland v. Commonwealth*, 400 Pa. 261, 161 A.2d 390, 402 (1960).

 Appellants cite *Butler v. Powers Estate ex rel. Warren*, 620 Pa. 1, 65 A.3d 885 (2013), for the proposition that a reservation of mineral rights is to be construed according to the understanding of the parties at the time of the reservation. Appellants' Brief at 17–18. The *Butler* Court applied the *Dunham* Rule, which is as follows:

> Pennsylvania law has long recognized a rebuttable presumption that if, in connection with a conveyance of land, there is a reservation or an exception of minerals without any specific mention of natural gas or oil ... the word minerals was not intended by the parties to include natural gas or oil. This precept, commonly known as the *Dunham* Rule, may be rebutted by a challenger through clear and convincing evidence that the intent of the parties, at the time of the conveyance, was to include natural gas and/or oil.

*Butler*, 65 A.3d at 888 (internal citations and quotation marks omitted). The rationale behind the *Dunham* Rule is that oil is not included in a reservation of mineral rights because oil is not commonly understood to be a mineral. *Id.* at 890.

The parties in *Butler* disputed whether a deed reserving "minerals and Petroleum Oils" included a reservation of natural gas. *Id.* at 886–87. Ultimately, the Supreme Court concluded the language in the reservation was not sufficiently specific to include natural gas, in particular the Marcellus Shale gas that was at issue in that case. *Id.* at 899. *Butler* is clearly distinguishable from the instant case, as the reservation in the 1953 Deed refers specifically to gas. Thus, the *Dunham* Rule—creating a rebuttable presumption that a reservation of mineral rights does not include a reservation of rights to the gas—has no application here.

Appellants also rely on *United States Steel Corp. v. Hoge*, 503 Pa. 140, 468 A.2d 1380 (1983) ("*Hoge II* "). There, U.S. Steel owned a subterranean coal seam. *Id.* at 1381–82. The deed granting U.S. Steel the right to mine the coal reserved for the grantor the right to "drill and operate through said coal for oil and gas." *Id.* at 1382. At issue was ownership of the coal bed gas. Considered a dangerous byproduct and not commonly commercially exploited at the time of the deed, exploitation of coal bed gas subsequently became commercially viable. *Id.* at 1384.

The Supreme Court concluded U.S. Steel owned the coal seam gas. "[A]s a general rule, subterranean gas is owned by whoever has title to the property in which the gas is resting." *Id.* at 1383.

When a landowner conveys a portion of his property, in this instance coal, to another, it cannot thereafter be said that the property conveyed remains as part of the former's land, since title to the severed property rests solely in the grantee. In accordance with the foregoing principles governing gas ownership, therefore, such gas as is present in coal must necessarily belong to the owner of the coal, so long as it remains within his property and subject to his exclusive dominion and control. The landowner, of course, has title to the property surrounding the coal, and owns such of the coalbed gas as migrates into the surrounding property.

*Id.* at 1383. Furthermore, the Supreme Court concluded that it "strains credulity" to believe the grantor intended to reserve the right to a gas that was dangerous and not commercially valuable at the time of the grant. *Id.* at 1385.

Appellants assert the existence of Marcellus Shale gas was unknown and its commercial exploitation was not possible in 1953. Thus, Appellants argue Joseph M. Stanley could not have intended to reserve the right to shale gas in 1953. We believe *Hoge II* is distinguishable from the instant case, and that it fails to support Appellants' argument for several reasons. First, the *Hoge II* Court addressed a subdivided mineral estate, with one party owning coal and the other party owning oil and gas. Instantly, by way of contrast, Joseph M. Stanley's reservation retained **all** of the gas underlying the land. It is not necessary in this case to distinguish between gas in a coal vein from gas found in any other strata. The 1953 Deed, by its plain language, reserves all of the gas.

Second, the *Butler* Court's analysis of *Hoge II* is fatal to Appellants' argument. In *Butler*, the appellee relied on *Hoge II* to argue that since it owned the shale it owned the shale gas. That is, the appellee argued that shale is undisputedly a mineral, and that the appellee owned the shale by virtue of the reservation of mineral rights. Pursuant to *Hoge II*, therefore, the appellee believed it owned the gas in the shale. The Supreme Court disagreed. The Court reasoned that the *Hoge II* Court treated coal bed gas distinctly from natural gas in that it is toxic and was once considered a dangerous waste product. *Butler*, 65 A.3d at 888–89. Shale gas, on the other hand, is "merely natural gas that has become trapped within the Marcellus Shale, rather than rising to the more permeable sand formations below the surface." *Id.* at 889. Further, the *Butler* Court found no significance in the methods needed to extract shale gas, as "the basis of the *Dunham* Rule lies in the common understanding of the substance itself, not the means used to bring those substances to the surface." *Id.*

To summarize, the 1953 Deed expressly reserved to Joseph M. Stanley the rights to all gas. Appellants do not contend the word gas is insufficient to encompass natu-

ral gas. To hold otherwise would violate the rules of construction expressed in *Highland.* Marcellus Shale gas is simply natural gas trapped in shale. We therefore conclude that the trial court did not err in entering judgment on the pleadings in favor of Appellees, as they own the rights to the shale gas pursuant to the plain language of the reservation in the 1953 Deed.

Order affirmed.

Judge ALLEN joins in the opinion.

Judge DONOHUE files a dissenting opinion.

## DISSENTING OPINION BY DONOHUE, J.

With due deference to the Majority, the decision to affirm the trial court's order opening the judgment in the absence of any evidentiary record completely disregards our standard of review. The certified record on appeal reflects that the Appellee, Rita Stanley Lupold ("Lupold"), submitted no evidence to the trial court in support of her allegations in the petition to open the judgment, including **no** evidence of a lack of actual notice of the action (either as a result of the service by publication or otherwise) and no evidence to support a finding that the search for potential heirs was insufficient. The trial court, in the absence of any evidence, apparently conducted its own factual investigation to provide itself with a basis for its decision. The learned Majority, rather than follow our standard of review requiring reversal in the absence of any evidence of record, has instead "supplemented" the certified record on appeal in direct contravention of the Pennsylvania Rules of Appellate Procedure. While I am not blind to the laudable desire to rectify an apparent prejudice when a judgment appears to have been entered without adequate notice

of suit, we cannot do so based upon mere assumptions and unsupported allegations. For these reasons, I must respectfully dissent.

Unlike the Majority, I begin with our standard of review. A petition to open a judgment is an appeal to the equitable powers of the court. *Cintas Corp. v. Lee's Cleaning Servs., Inc.,* 549 Pa. 84, 700 A.2d 915, 919 (1997); *First Seneca Bank & Trust Co. v. Laurel Mountain Development Corp.,* 506 Pa. 439, 485 A.2d 1086, 1088 (1984). Our standard of review in matters of equity is to determine whether the findings of fact are supported by competent evidence, whether an error of law has been committed, or whether there has been a manifest abuse of discretion. *Possessky v. Diem,* 440 Pa.Super. 387, 655 A.2d 1004, 1008 (1995). To do so, we must "examine the entire record" and "where the equities warrant . . . this Court will not hesitate to find an abuse of discretion." *Aquilino v. Philadelphia Catholic Archdiocese,* 884 A.2d 1269, 1280 (Pa.Super.2005) (quoting *Reid v. Boohar,* 856 A.2d 156, 159 (Pa.Super.2004)).

My review of the record here discloses no basis upon which to affirm the trial court's decision to open the judgment. In connection with a quiet title action filed by Appellants, Donald and Mary Sisson (the "Sissons"), the trial court granted a motion for service by publication pursuant to Rule 430(a) of the Pennsylvania Rules of Civil Procedure, directed to the heirs or assigns of Joseph M. Stanley. On May 5, 2010, the Sissons published notice of their suit in the Susquehanna County Independent (per Rule 430(b)). After no heirs or assigns of Joseph M. Stanley responded to the service by publication, on August 2, 2010, the trial court entered judgment in favor of the Sissons.

Four months later, on November 9, 2010, Lupold (by and through her powers

of attorney) filed a verified petition to open the judgment (the "Petition") entered on August 2, 2010. The trial court immediately entered an order in the form provided in Rule 206.6 of the Pennsylvania Rules of Civil Procedure.[1]

### ORDER

AND NOW, this 9th day of November, 2010, upon consideration of the foregoing petition, it is hereby ordered that

(1) A rule is issued upon the Respondents to show cause why the petitioner is not entitled to the relief requested;

(2) The Respondents shall file an answer to the petition within twenty (20) days of service upon the Respondents;

(3) **This petition shall be decided pursuant to Pennsylvania Rule of Civil Procedure 206.7;**

(4) Depositions shall be completed within ____ days of this date;

(5) Argument [ ] shall be held on December 28, 2010, 11:15 a.m. in Courtroom # 1 of the Susquehanna County Courthouse; and

(6) Notice of the Entry of this Order shall be provided to all parties by the Petitioner or her counsel.

### BY THE COURT

Trial Court Order, 11/9/2010, at 1 (emphasis added).

The Sissons filed a verified answer and new matter to the Petition on December 3, 2010, and Lupold filed an answer to the new matter on December 21, 2010. The record does not reflect any other activity by the parties until oral argument on December 28, 2010, including no depositions or other discovery and no briefs or other submissions to the trial court. The record does not contain a transcript of the oral argument. The trial court then issued the following order:

### ORDER

NOW TO WIT, this 28th day of December 2010, after argument held on the [Petition], it be and is hereby Ordered that the judgment ordered July 12, 2010, be and is hereby Opened.

[Lupold is] directed to file a responsive pleading to Plaintiffs' Complaint within twenty (20) days of this Order.

We specifically find under the circumstances that [the Sissons] averred that they believed John M. Stanley to be deceased[,] that the attempts to locate his heirs were insufficient as outlined in the Affidavit Pursuant to Pa.R.C.P. 430(a), and as such service upon the heirs of John M. Stanley was invalid. We specifically note no mention of investigation of contents of the will at Will Book 20 Page 570. See *Deer Park Lumber v. Major*, 384 Pa.Super. 625, 559 A.2d 941 (1989).

### BY THE COURT

Trial Court Order, 12/28/2010, at 1.[2] On December 29, 2010, counsel for the Sis-

---

1. By local rule, Susquehanna County has adopted the alternative procedure in Pa. R.C.P. 206.6 requiring the issuance of a rule to show cause as a matter of course upon the filing of a petition. Susq. Civil Rule 206.4(c). The form of order prescribed by Rule 206.6 requires the trial court to set a date for completion of depositions and schedule an argument thereafter. The Note to Rule 206.6 provides that a county may opt to replace the discovery and argument provisions in paragraphs (4) and (5) of the order with an evidentiary hearing. Pa.R.C.P. 206.6 Note. Susquehanna County has not adopted this optional practice.

2. On January 24, 2011, the trial court issued an Amended Order noting the will was at page 560 rather than page 570.

sons, apparently not having received service of the trial court's order, filed a post-argument brief in opposition to the Petition.

In paragraph (1) of its November 9, 2010 order, the trial court issued a rule to show cause why the relief requested in the Petition should not be granted, and in paragraph (3) the trial court acknowledged that the rule to show cause would be decided in accordance with Rule 206.7 of the Pennsylvania Rules of Civil Procedure.

### Rule 206.7. Procedure After Issuance of Rule to Show Cause

(a) If an answer is not filed, all averments of fact in the petition may be deemed admitted for the purposes of this subdivision and the court shall enter an appropriate order.

(b) If an answer is filed raising no disputed issues of material fact, the court on request of the petitioner shall decide the petition on the petition and answer.

(c) If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the order of the court. If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision.

(d) The respondent may take depositions, or such other discovery as the court allows.

Pa.R.C.P. 206.7.[3]

As indicated, the Sissons filed a verified answer to the Petition on December 3, 2010. My review of this answer shows that it raised at least two disputed issues of fact material to the resolution of the rule to show cause. First, the Sissons disputed that service by publication had not provided Lupold with notice of the action prior to the entry of judgment, as alleged in paragraph 10 of the Petition:

Petition ¶ 10. [Lupold] never received actual or constructive notice of the above captioned action prior to entry of the Order or judgment entered thereon.

Answer ¶ 10. The allegations contained in Paragraph 10 of [the Petition] are conclusions of fact and law to which no response is required under the Pennsylvania Rules of Civil Procedure and they are, therefore, deemed denied and placed at issue. Strict proof thereof is demanded at the time of trial.

Petition, 11/9/2010, ¶ 10; Answer, 12/3/2010, ¶ 10. Second, the Sissons disputed Lupold's contention that the search for heirs as set forth in the affidavit ac-

---

**3.** In a footnote, the Majority contends that any discussion of Rule 206.7 is "inapposite" because the Sissons did not challenge the trial court's lack of compliance with the rule. Majority Opinion at 269 n. 4. Whether the Sissons objected to the lack of compliance with Rule 206.7 is entirely irrelevant, however, since the lack of compliance by everyone involved in the process resulted in the absence of any evidentiary record to consider on appeal—which implicates our standard of review. It is impossible to review the adequacy of the record in this appeal without understanding the petition and rule proceedings that generated the trial court's decision. Noncompliance with Rule 206.7 is not the basis of my dissent—the lack of evidence in the record is.

Frankly, nothing in the certified record suggests that counsel for the Sissons had any better understanding of proper petition and rule practice under Rule 206.7 than did counsel for Lupold or the trial court. Unfortunately, as the present discussion demonstrates, for our purposes, the result of this collective confusion is the lack of any evidentiary record—and thus providing no basis on which to affirm the trial court's order granting the petition to open.

companying the motion for service by publication was insufficient and, more specifically, that they had failed to locate an obituary in a local newspaper that would have disclosed Joseph M. Stanley's heirs:

> Petition ¶ 8. [Lupold] alleged the search made by [the Sissons] was insufficient under the circumstances, particularly in light of the fact that they failed to discover Joseph M. Stanley's obituary, published in a local newspaper, which would have resulted in the discovery of his surviving sister and nieces and nephews.
>
> Answer ¶ 8. The allegations contained in Paragraph 8 of [the Petition] are conclusions of fact and law to which no response is required under the Pennsylvania Rules of Civil Procedure and they are, therefore, deemed denied and placed at issue. Strict proof thereof is demanded at the time of trial.

Petition, 11/9/2010, ¶ 8; Answer, 12/3/2010, ¶ 8.

Because the Sissons filed a timely answer raising disputed issues of material fact,[4] they triggered the application of section (c) of Rule 206.7. Pursuant to Rule 206.7(c), Lupold had the burden of taking depositions or other discovery to provide the trial court with evidence to support the factual allegations in the Petition. As Rule 206.7 makes clear, the burden of proof with respect to disputed issues of material fact rests with the petitioner, since if the petitioner fails to present evidence, the trial court must accept as true the allegations of fact in the respondent's answer. *Petition of Tax Claim Bureau of Westmoreland Cnty.*, 149 Pa.Cmwlth. 532, 613 A.2d 634, 638 (1992) ("[T]he party who has obtained the rule has the burden of proof upon him."); *McCoy v. Mahoney*, 820 A.2d 736, 740 (Pa.Super.2003); *see also 500 James Hance Court v. Pennsylvania Prevailing Wage Appeals Bd.*, 613 Pa. 238, 33 A.3d 555, 575–76 (2011) ("In every lawsuit, somebody must go on with it; the plaintiff is the first to begin, and if he does nothing he fails.... The test, therefore, as to the burden of proof is simply to consider which party would be successful if no evidence at all was given.").

The certified record on appeal does not disclose that Lupold took any depositions or other discovery. The record likewise does not demonstrate that Lupold ever introduced or otherwise submitted any evidence to the trial court in support of the disputed issues of material fact alleged in her Petition. The trial court did not conduct an evidentiary hearing. While the trial court's December 28, 2010 order confirms that it heard oral argument before granting the rule, there is no indication in the record that it received any evidence at this proceeding.[5] Far from disputing this point, in her appellate brief filed with this Court, Lupold freely admits that "not one word of testimony was taken in this case," and she agrees that the trial court decided the case despite "the lack of an evidentiary record." Lupold's Brief at 3, 7.[6]

---

4. Arguably, the Sissons' answers here constitute general denials under Rule 1029(b). Pa. R.C.P. 1029(b). Rule 1029(b), however, has no application in rule to show cause practice under Rules 206.1–206.7. By its terms, Rule 1029(b) applies only to "pleadings," and Rule 1017 (which lists the types of pleadings allowed in civil actions) does not include petitions for rules to show cause or answers filed thereto as "pleadings." *See* Pa.R.C.P. 1017. Rule 206.7(c) requires only that an answer to

a petition for a rule to show cause raise one or more disputed issues of material fact, and the Sissons' answers to paragraphs 8 and 10 of the Petition, which deny Lupold's allegations of fact in those paragraphs and demand strict proof to the contrary, satisfy this basic requirement.

5. As noted hereinabove, the record does not contain a transcript of the oral argument.

In granting the rule to show cause and opening the judgment, the trial court necessarily and/or expressly decided the disputed issues of material fact in Lupold's favor despite the absence of any evidence of record to support those determinations. No evidence of record supports Lupold's allegation that she did not receive notice of the Sissons' action, either as a result of the service by publication or otherwise. Lupold also introduced no evidence of record to provide any basis for the trial court's determination that the Sissons' search for potential heirs was insufficient. Lupold's only specific factual allegation in this regard (that an obituary in a local newspaper had identified said heirs) remains wholly unsupported, as Lupold never introduced the alleged obituary into evidence or offered any information upon which the trial court could have found that the Sissons should have located it (including, inter alia, the name of the local newspaper in question, the date of publication of the obituary, or the heirs identified). As set forth hereinabove, our standard of review permits affirmance of a trial court's order only if its findings of fact are supported by competent evidence. *Possessky*, 655 A.2d at 1008. In the absence of any evidentiary record to support the trial court's factual findings in this case, we must reverse.

In the absence of an evidentiary record, the trial court conducted its own factual investigation to provide a basis for its decision. In its December 28, 2010 order, the trial court refers to Joseph M. Stanley's will, which it found in the Susquehanna Recorder of Wills' office. Trial Court Order, 12/28/2010, at 1. This is the first, and the only, reference to the Stanley will during the entirety of the proceedings in the trial court until this time, including no

references in either Lupold's Petition or the Sissons' answer. Nothing in the certified record on appeal demonstrates, or even suggests, that the Stanley will was ever introduced into evidence by either of the parties, including at oral argument or otherwise. In a brief filed with the trial court **after** oral argument, the Sissons **still** did not mention a will, representing instead that at oral argument Lupold had relied almost exclusively on *Deer Park.* Brief in Opposition to Petition to Open and/or Strike Judgment, 12/29/2010, at 2. On appeal, Lupold does not represent that she was responsible for bringing the Stanley will to the trial court's attention, while the Sissons suggest that the trial court found it as a result of its own efforts. *See* Sissons' Brief at 16 ("The lower court determined the search was insufficient only after locating the Will of [Lupold's] father.").

Trial courts are not empowered to conduct their own investigations to obtain evidence to decide disputed issues of fact. *See, e.g., Klemow v. Time Inc.,* 466 Pa. 189, 352 A.2d 12, 14 n. 3 (1976); *HYK Const. Co., Inc. v. Smithfield Tp.,* 8 A.3d 1009, 1017 (Pa.Cmwlth.2010) ("The trial court improperly embarked on an extramural investigation...."). As our Supreme Court made clear in *Klemow,* a trial court's act of conducting its own fact-finding investigation is "inconsistent with the established role of the trial court in adversarial litigation." *Id.* To this end, the Supreme Court recently amended Canon 2 of the Code of Judicial Conduct to clarify that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." CODE OF JUDICIAL CONDUCT, Canon 2.9(C) (2014).

---

**6.** Clearly unaware that the burden of proof rested with her, Lupold faults the Sissons for

not requesting an evidentiary hearing. Lupold's Brief at 3, 7.

In a footnote, the Majority contends that the trial court "had authority" to take judicial notice of the Stanley will pursuant to Rule 201 of the Pennsylvania Rules of Evidence. Majority Opinion at 271–72 n. 8. I do not agree. In the case before us, no party attempted to prove the fact of the will or even mentioned it. As this Court has repeatedly emphasized, "Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proved is so well known that evidence in support thereof is unnecessary...." *Floors, Inc. v. Altig*, 963 A.2d 912, 918 (Pa.Super.2009) (quoting *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 898–99 (Pa.Super.2006)). The two cases cited in the Majority's footnote merely reiterate this fundamental point, as in both instances we approved of a trial court's decision to take judicial notice of public records already at issue in the case but which had not been formally introduced into the record. *Bykowski v. Chesed, Co.*, 425 Pa.Super. 595, 625 A.2d 1256, 1257–58 & n. 1 (1993) (stating that the trial court was permitted to take judicial notice of a deed confirming ownership of real property, which ownership had already been admitted in the pleadings); *Pocono Summit Realty, LLC v. Ahmad Amer, LLC*, 52 A.3d 261, 269 (Pa.Super.2012) (stating that the trial court was permitted to take judicial notice of subdivision plans that the plaintiffs had referenced and discussed in their complaint but had failed to attach to said pleading).

More importantly, neither *Bykowski* nor *Pocono* authorize what occurred here; namely, for a trial court to conduct its own factual investigation and then take judicial notice of the "evidence" it found. In *Chaplin v. Pelton*, 282 Pa.Super. 487, 423 A.2d 8 (1980), the trial judge decided a real estate case based upon "his own examination of records in the Record[er] of Deeds

Office." *Id.* at 8. The appellees had attached various deeds to a trial brief, but did not introduce them into evidence. The trial judge, in deciding the case after a non-jury trial, indicated that he had undertaken his own investigation and examination of the deeds, which he insisted was appropriate because they were "matters of public record in the Clearfield County Recorder of Deeds Office." *Id.* This Court emphatically disagreed, ruling that the independent examination was improper and could not be justified based upon "judicial notice."

> The fact that the deeds were recorded and hence public records gave them no special sanctity, being merely public notice of title. Proper exemplification of recorded deeds makes them available as legal evidence, and simply dispenses with the necessity of producing the original deeds in those cases where such deeds would be competent testimony. This does not obviate the necessity of producing and introducing into the record either the original or exemplified copies of such documents at trial.
>
> **Nor can such action by the trial judge be sustained on the ground of judicial notice.**
>
> Aside from the fact that it concerned disputed questions of fact which are not within the domain of judicial notice, no request to take such notice was made nor was any authorization given to make such an examination.
>
> The trial judge's action in examining the deed records not only deprived appellant of the opportunity to question, as well as dispute, the relevancy of any such recorded deeds, but made it impossible for this court to determine the basis for his factual findings.

*Id.* at 9 (emphasis added; footnotes omitted).[7]

The Majority's footnote further states that "[p]ursuant to our [8] request, the Stanley will has been incorporated into the certified record." Majority Opinion at 272 n. 8. This attempt to supplement the certified record was, in my view, a clear violation of our Rules of Appellate Procedure. This Court's ability to correct or modify a certified record is governed by Pa.R.A.P. 1926(b)(1), which provides as follows:

**Rule 1926. Correction or Modification of the Record**

\* \* \*

(b) If anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, the omission or misstatement may be corrected by the following means:

(1) by the trial court or the appellate court upon application or on its own initiative at any time; in the event of correction or modification by the trial court, that court shall direct that a supplemental record be certified and transmitted if necessary[.]

Pa.R.A.P. 1926(b)(1). The Note to Pa. R.A.P. 1921 provides further clarification:

[I]f the appellate court determines that something in the original record or otherwise presented to the trial court is necessary to decide the case and is not included in the certified record, the appellate court may, upon notice to the parties, request it from the trial court sua sponte and supplement the certified record following receipt of the missing item. See Rule 1926 (correction or modification of the record).

Pa.R.A.P. 1921 Note.

Pursuant to Pa.R.A.P. 1926(b)(1), this Court may correct or modify a certified record to add anything in the original record or presented to the trial court, but which was omitted as a result of error, breakdown in processes of the court, or by accident or misstatement. As discussed at length hereinabove, however, the Stanley will meets none of these requirements. The parties never presented the Stanley will to the trial court or sought its introduction into evidence in connection with Lupold's Petition. To the contrary, nothing in the certified record suggests that the parties were even aware of its existence at the time the trial court referenced it in its order granting the Petition and opening the judgment. The absence of the Stanley will from the certified record

---

**7.** The Majority attempts to distinguish *Chaplin* on the grounds that there, the trial judge relied upon the contents of the document uncovered by its investigation, while instantly the trial court's decision rested on the Sissons' "failure to discover an easily discoverable document." Majority Opinion at 272 n. 8.

The Majority relies upon a false dichotomy, since in *Chaplin* we emphasized that a trial court may not conduct its own factual investigation and then take judicial notice of the results of its improper efforts. *Chaplin*, 423 A.2d at 9. Our decision in *Chaplin* did not turn on the degree of difficulty the trial court encountered in conducting its search. Similarly, the issue here is that the trial court's

factual investigation was fundamentally inappropriate, regardless of its purpose or complexity.

The Majority's reference to the Stanley will as "easily discoverable" is itself noteworthy, as the Majority offers no explanation why Lupold did not locate the document herself. Under proper petition and rule practice pursuant to Rule 206.7, it was Lupold's obligation to locate the "easily discoverable" will, reference it in her petition to open, and then come forward with proof of its existence—which would have provided the trial court with a proper evidentiary basis for a decision to open the judgment.

**8.** The Authoring Judge of the Majority decision acted alone in making this request.

transmitted to this panel on appeal was not the result of any error, breakdown in processes, accident, or misstatement. It was not included in the certified appellate record because the parties never made the Stanley will a part of the certified appellate record. Nothing in our Rules of Appellate Procedure permits this Court to "incorporate" a document into a certified record if the certified record discloses no proper basis for the document's incorporation.

The Majority correctly notes that the current climate to find and secure properties for gas exploration in Pennsylvania will likely result in an increase in the number of motions requesting service by publication. Maj. Op. at 273 n. 11. To this end, the Majority's recognition of the need to "properly scrutinize, document, and verify" such motions before permitting service by publication is commendable. *Id.* This worthy goal cannot be accomplished, however, by ignoring the Rules of Civil and Appellate Procedure and deciding cases without regard for our standard of review. By rule, petitioners seeking to open judgments have the burden to present evidence with respect to disputed issues of fact and the trial court must decide those disputed issues of fact based upon the evidence presented. Here, the Majority apparently embraces an alternative procedure in which the burden of coming forward with evidence is eliminated and the trial court may instead rely on unproven allegations (or worse, its own extramural investigation, which this Court then blesses by "supplementing" the certified record to incorporate its findings). Because our standard of review requires it, I dissent.

I also disagree with the learned Majority's application of this Court's prior decision in *Deer Park Lumber, Inc. v. Major*, 384 Pa.Super. 625, 559 A.2d 941 (1989). In my view, *Deer Park* has no application to

the present case, since there we ruled only that the trial court should have opened the judgment because the appellee had failed to comply with Rule 430(a) when moving for service by publication. *Id.* at 944–47. Rule 430(a) provides that a party seeking permission to serve original process by publication must file a motion "accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." Pa.R.C.P. 430(a).

In *Deer Park*, our review of the certified record on appeal disclosed that the appellee had not complied with these requirements:

> In the case at bar, appellee did not file a motion requesting that service be accomplished by publication. Rather, appellee filed an affidavit along with its complaint stating that the whereabouts of appellants were unknown. This affidavit, drafted pursuant to former Rule 1064(c), failed to provide any indication of the types of procedures used to locate C.B. or Eunice Major or any of the appellants herein. Nevertheless, the trial court, without inquiring into the investigation undertaken to establish the whereabouts of any potential defendants, ordered service by publication. This was clearly error. Service by publication is the exception, not the rule, and **can only be ordered provided the requirements of Rule 430(a) have been met. In this case, the record reveals that they have not.**

*Deer Park*, 559 A.2d at 944–45 (emphasis added; footnote omitted). Leaving no doubt about the basis for our decision in *Deer Park*, we concluded the opinion as follows:

> In light of the foregoing, what we hold today is that in order to effect service by publication pursuant to the provisions of

Rule 430(b), the party must first file a motion, accompanied by an affidavit conforming to the requirements set forth in Rule 430(a). **Because the appellee and the trial court failed to follow this procedure, we conclude that a default judgment should not have been entered.** Under the present circumstances, we find that appellants were not properly served with notice of this action, therefore, the trial court had not obtained the requisite personal jurisdiction needed for entry of judgment. Accordingly, we conclude that the trial court's action in refusing to open the default judgment and allow the appellants to file an answer to the complaint constituted an abuse of discretion. Under these circumstances, we have no alternative but to reverse their order and remand for proceedings consistent with this opinion.

*Id.* at 946–47 (emphasis added; citation and footnote omitted).

In the present case, the Majority does not dispute that the Sissons complied with the requirements of Rule 430(a), as they filed with the trial court a "Motion for Order Authorizing and Directing Service by Publication Pursuant to Pa.R.C.P. 430(a)," attaching thereto an affidavit "stating the nature and extent of the investigation which has been made" to locate the heirs of Joseph M. Stanley. The Majority chooses to ignore this obvious difference from *Deer Park*, instead relying upon a discussion in that case regarding the shortcomings of the search conducted by the appellee (as established at a subsequent evidentiary hearing, rather than based upon the contents of the non-compliant affidavit). This discussion in *Deer Park* regarding the parameters of the search was mere non-decisional dicta, however, as it was only undertaken in response to a counter argument posed by the appellee in an effort to sustain the trial court's ruling. *Id.* at 945 ("It is also ar-

gued by appellee that the investigation undertaken to locate the appellants, while not actually placed in its affidavit, was nevertheless sufficient under the rules to allow for service by publication."). The outcome of this discussion was not in any respect essential to our decision to reverse the trial court, since as the above-quoted passages from *Deer Park* make clear, we reversed because the appellee failed to comply with the requirements of Rule 430(a), and this outcome would have been the same even if the appellee in that case had conducted an adequate investigation designed to locate potential heirs.

The doctrine of stare decisis does not apply to dicta unnecessary to the outcome of the prior case. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1081 (2013). Our decision in *Deer Park* does not require trial courts, in response to a petition to open a judgment, to review the adequacy of a plaintiff's investigation into a defendant's whereabouts before obtaining permission to serve by publication. To the contrary, *Deer Park*, properly understood, provides that the requisite personal jurisdiction needed for entry of judgment following service by publication is conferred only after strict compliance with the dictates of Rule 430(a). In the absence of any contention that the Sissons failed to comply with Rule 430(a), I would reverse the trial court's decision to open the judgment in this case.

Contrary to the Majority's representations, its affirmance of the trial court's decision is not an exercise in stare decisis mandated by *Deer Park*, but rather is an unwarranted expansion and misapplication of that case. In so doing, the Majority creates a procedure never intended or contemplated by Rule 430(a) and one that distorts the requirements for obtaining personal jurisdiction under that rule. As described hereinabove, under Rule 430(a), a plaintiff in a real estate case must file a motion requesting service by publication

and attach an affidavit stating the nature and extent of the investigation undertaken to locate potential heirs and assigns of the real estate interests in question. Pa. R.C.P. 430(a). The trial court must then determine, based upon the contents of the affidavit, whether the plaintiff has conducted a good faith search and whether service by publication is a method of service reasonably calculated to give the potential heirs and assigns notice of the pending litigation and an opportunity to be heard.[9] *Romeo v. Looks*, 369 Pa.Super. 608, 535 A.2d 1101, 1105 (1987), *appeal denied*, 518 Pa. 641, 642, 542 A.2d 1370 (1988). Where this procedure is properly followed, *see Deer Park*, 559 A.2d at 944–47, and where the trial court grants the motion, service by publication **confers personal jurisdiction over the potential heirs or assigns.** Pa.R.C.P. 410;[10] Pa.R.C.P. 430(b)(2) ("When service is made by publication upon the heirs and assigns of a named former owner or party in interest, a court may permit publication against the heirs or assigns generally if it is set forth in the complaint or in an affidavit that they are unknown.").

According to the Majority, however, compliance with Rule 430(a) may **or may not** confer personal jurisdiction. Although not described anywhere in the Pennsylvania Rules of Civil Procedure, the Majority insists that a potential heir or assign may,

at any point in the future without limitation, come forward and file a petition to open the judgment. At that time, the trial court must reconsider its prior decision authorizing service by publication based upon any new information provided in the petition to open. And if, so the argument goes, the trial court determines in hindsight that it should not have granted the motion for service by publication, then it never actually obtained personal jurisdiction over the petitioner and the judgment must be opened. In my view, our Rules of Civil Procedure establish the methods by which personal jurisdiction may be obtained (in this case, by compliance with Rule 430(a)), and include no contrary provisions for "hindsight withdrawal" of personal jurisdiction once conferred. In addition to the absence of any authorization under our procedural rules for such an approach, from a policy perspective, it is unwise and counterproductive, as it erodes the reliability and finality of judgments entered after service by publication, as such judgments are always and forever subject to collateral attack by potential heirs or assigns.

For all of these reasons, I respectfully dissent.

---

**9.** Two other cases cited by the Majority are also inapposite to the present circumstances. In both *Fusco v. Hill Financial Sav. Ass'n*, 453 Pa.Super. 216, 683 A.2d 677 (1996), and *PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219 (Pa.Super.2007), the affidavits filed pursuant to Rule 430(a) identified a specific heir whose location in the Commonwealth was known to the affiant. *Fusco*, 683 A.2d at 680; *PNC*, 929 A.2d at 229. Pursuant to Rule 430(b)(2), service by publication is not permitted if the identity of an heir or assign is known. Pa.R.C.P. 430(b)(2).

**10.** Rule 410 provides in relevant part:

(a) In actions involving title to, interest in, possession of, or charges or liens upon real property, original process shall be served upon the defendant in the manner provided by Rule 400 et seq.

\* \* \*

(c) If service is made pursuant to an order of court under Rule 430(a), the court shall direct one or more of the following methods of service:

(1) publication as provided by Rule 430(b),

Pa.R.C.P. 410(a), (c)(1).